ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
11 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Claude C. Lightfoot, Jr., an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
The underlying facts of this matter are largely undisputed. At all times relevant to this proceeding, respondent maintained a law office in New Orleans, where his practice was almost exclusively confined to bankruptcy matters. In the summer of 2000, United States District Judge G. Thomas Porteous, Jr. contacted respondent to discuss the significant financial difficulties he and his wife, Carmella, were then experiencing. Respondent met with Judge and Mrs. Porteous and recommended they attempt a non-bankruptcy “workout” of their debt. This effort ultimately proved fruitless.
As a result, in March 2001, respondent recommended that Judge and Mrs. Porteous file for bankruptcy protection under Chapter 13 of the Bankruptcy Code. However, respondent was aware that at that time the local newspaper, The Times-Picayune, published each Sunday a list of the names of individuals who had filed for bankruptcy protection during the preceding week. This list was compiled based solely upon the information in the initial bankruptcy petition. Accordingly, to protect his clients from the public “embarrassment” of having their bankruptcy | ¡.filing published in the newspaper, respondent recommended that Judge and Mrs. Porteous allow him to purposely misspell their names on the petition. Respondent also recommended to his clients that they obtain a temporary post office box, the address of which could be used on the bankruptcy petition in place of their home address. Respondent told Judge and Mrs. Porteous that once the information regarding the inaccurate filing was reported in The Times-Picayune, he would amend their petition to provide the proper names and address to the Bankruptcy Court.
Judge and Mrs. Porteous agreed to this plan, and on March 28, 2001, respondent filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Louisiana on behalf of his clients. The petition listed the debtors as “G.T. Ortous” and “C.A. Ortous,” and gave the debtors’ street address as a post office box in Harvey, Louisiana, rather than listing the address of the home where Judge and Mrs. Porteous resided in Metairie. The remainder of the information included in the filing was correct. Judge and Mrs. Porteous each signed the petition, attesting under penalty of perjury that “the information provided in this peti *58 tion is true and correct.”[1] Respondent also signed the petition as attorney for the debtors.
On Sunday, April 8, 2001, The Times-Picayune published the weekly list of local bankruptcy filings, including that of “C.A. and G.T. Ortous, Post Office Box 1723, Harvey.” On April 9, 2001, respondent filed an amended bankruptcy petition on behalf of his clients, listing the debtors as Gabriel T. Porteous, Jr. and Carmella A. Porteous, and correcting the street address to their residence in Metairie. Following this filing, the bankruptcy proceeded in the usual and | P,customary fashion. In July 2004, Judge and Mrs. Porteous were discharged in bankruptcy. During the three years that the Porteous case was pending, none of the creditors objected to the error in the initial petition, and none of the creditors objected to the discharge that was ultimately granted to Judge and Mrs. Porteous.
DISCIPLINARY PROCEEDINGS
In October 2008, the ODC opened an investigation into respondent’s conduct in the Porteous bankruptcy matter.[2] In October 2010, the ODC filed one count of formal charges against respondent, alleging that by his actions as set forth above he has violated the following provisions of the Rules of Professional Conduct: Rules 1.2(d) (a lawyer shall not counsel a client to engage in conduct that the lawyer knows is criminal or fraudulent), 3.3(a)(1) (a lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer), 3.3(a)(3) (a lawyer shall not offer evidence that the lawyer knows to be false), 3.3(b) (a lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging, or has engaged in fraudulent conduct related to the proceeding shall take reasonable remedial measures, including disclosure to the tribunal), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
Respondent answered the formal charges and admitted his violation of Rules 3.3(a)(1) and 8.4(a), but he denied he violated any other Rules of Professional Conduct. Specifically, respondent admitted that he counseled Judge and Mrs. |4Porteous to file their bankruptcy petition using fictitious names, and counseled them to secure a temporary post office box and to list that address on the petition. Respondent acknowledged that discipline is appropriate for this conduct. In mitigation, respondent denied that his actions were designed to mislead a creditor, the bankruptcy trustee, or the tribunal, or to assist his clients in any criminal or fraudulent conduct; rather, he contended he acted solely in a “misguided effort” to help Judge Porteous “avoid adverse publicity in the local press.” He also pointed out that less than two weeks later, he amended the petition to include the correct information. *59 As no proceedings took place in the bankruptcy case during this time, respondent suggested he caused no harm to the court or to any of the creditors of Judge and Mrs. Porteous.

Formal Hearing

Following the filing of respondent’s answer, this matter was set for a hearing before the hearing committee. Respondent testified at the hearing on his own behalf and on cross-examination by the ODC. S.J. Beaulieu, Jr., the Chapter 13 Trustee in the Eastern District of Louisiana, also appeared as a witness, as did two experienced practitioners in the field of bankruptcy law.
Both parties introduced documentary evidence, including the transcripts of the testimony given by respondent and Mr. Beaulieu during the impeachment trial of Judge Porteous in the United States Senate. Respondent also introduced numerous letters from colleagues and friends attesting to his good character and reputation.
During his testimony before the committee, respondent explained that he first met Judge Porteous in the summer of 2000, when the judge contacted him to discuss the difficulty he and his wife were having in repaying a significant amount of credit card debt. Because Mrs. Porteous was “completely distraught” over the |Bidea of filing for bankruptcy, respondent agreed to attempt to negotiate a voluntary “workout” with the creditors outside of bankruptcy. However, despite respondent’s best efforts, this proposal was not successful.
By March of 2001, respondent knew that Judge and Mrs. Porteous would have no choice but to declare bankruptcy. On March 28, 2011, respondent prepared and filed a bankruptcy petition on behalf of his clients. Respondent admitted he purposely misspelled his clients’ surname on the petition, and provided a post office box address instead of their correct residential address. Respondent testified that he has never done this “ever in my whole career as a lawyer,” but that he proposed the course of action to Judge and Mrs. Porteous out of “compassion” and to “avoid the splash in the newspaper” that would come from the publication of their bankruptcy filing.
After the newspaper published the incorrect information obtained from the initial bankruptcy petition filed by Judge and Mrs. Porteous, respondent immediately sought to file an amended petition with the correct names and address. At that time, respondent telephoned the bankruptcy trustee, S.J. Beaulieu, Jr., to alert him that there was “an error” in the names on the original petition, necessitating the amendment. Respondent testified that he “chose [his] words very carefully” when speaking to Mr. Beaulieu because he “didn’t want to lie to him.” However, Mr. Beaulieu testified that respondent told him that there was a “typographical error” in the bankruptcy petition. Having found respondent to be a competent and trustworthy practitioner over many years, Mr. Beaulieu had no reason to disbelieve what he had been told, so he suggested that respondent would be able to correct the petition before the notices were sent out to the creditors by the Bankruptcy Court. Mr. Beaulieu testified that had he been truthfully advised by respondent of the intentional misstatement in the initial petition, he would have filed a motion to dismiss the Porteous bankruptcy as having been filed in bad faith.
| ^Hearing Committee Report
After reviewing the testimony and the evidence presented at the hearing, the hearing committee made factual findings consistent with the underlying facts set *60 forth above. The committee noted that-without any prodding from Judge Porteous or his wife, respondent concocted a plan to purposely falsify the initial bankruptcy petition, have the newspaper publish the false names, and then amend the petition to properly name Judge and Mrs. Porteous and put their proper address. This plan, which respondent reasoned would protect the identities of Judge and Mrs. Porteous from the press and the public, worked flawlessly. The falsified initial petition was filed, and after The Times-Picayune published the “alias” created by respondent, he sought to amend the petition the next day to provide the proper names and address. As to the question of whether respondent lied to the bankruptcy trustee when he filed the amended petition, the committee found more credible Mr. Beau-lieu’s testimony that respondent indicated the amendment was necessary because “typos” needed to be corrected. Based upon these factual findings, the committee concluded respondent violated Rules 1.2(d), 3.3(a)(1), 3.3(a)(3), 3.3(b), and 8.4(c) of the Rules of Professional Conduct.
The committee found that respondent’s conduct did not cause harm to his clients or to the bankruptcy proceeding, but nevertheless, found respondent caused significant harm to the reputation and sanctity of the legal profession. The committee therefore determined that the applicable baseline sanction in this matter is suspension. In mitigation, the committee found the following factors present: absence of a prior disciplinary record and full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings. The committee made no findings regarding aggravating factors.
^Considering the mitigating factors present in this matter, the committee recommended respondent be suspended from the practice of law for six months, with all but thirty days deferred.
The ODC filed an objection to the hearing committee’s report, arguing the sanction recommended by the committee is too lenient.

Disciplinary Board Recommendation

After review, the disciplinary board determined the hearing committee’s factual findings are supported by the record and are not manifestly erroneous. Accordingly, the board adopted the factual findings contained in the committee’s report. Based on these facts, the board agreed with the committee that respondent violated Rules 1.2(d), 3.3(a)(1), 3.3(a)(3), 3.3(b), and 8.4(c) of the Rules of Professional Conduct. The board also determined that respondent’s conduct was prejudicial to the administration of justice, in violation of Rule 8.4(d), and that he violated the Rules of Professional Conduct, thereby violating Rule 8.4(a).
The board determined that respondent knowingly violated duties owed to his clients, the public, the legal system, and the profession. Respondent counseled his clients to provide false and deceptive information on their bankruptcy petition regarding their names and address. This petition was executed under penalty of perjury, but nonetheless, respondent filed the petition with the Bankruptcy Court, knowing the information was false. He thereafter continued the deception by providing inaccurate and incorrect information to the bankruptcy trustee regarding the necessity of amending the petition. While this conduct did not monetarily harm respondent’s clients or their bankruptcy ease, there was actual harm to the legal system and the profession, the integrity of which is called into question whenever a lawyer is the source of misconduct. Additionally, because the bankruptcy case was an issue in the impeachment proceedings *61 of Judge Porteous, | ^respondent was required to testify before the United States Senate. These proceedings were publicly broadcast and closely followed, casting a negative light on Louisiana’s legal profession. The board determined that under these circumstances, the applicable baseline sanction in this matter is suspension.[3]
The board found the following mitigating factors present: absence of a prior disciplinary record, personal problems,[4] full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, and remorse. In aggravation, the board acknowledged that respondent has substantial experience in the practice of law (admitted 1987). The board rejected the ODC’s argument that respondent also possessed a dishonest and selfish motive, reasoning that respondent’s “misguided effort to help his clients was motivated by compassion for his clients,” who were distraught over the prospect of having to file for bankruptcy. The board likewise rejected the ODC’s argument for the aggravating factor of a pattern of misconduct, as respondent’s conduct was but “a single blemish on an otherwise reputable and meaningful 24 year law career.”
Based upon the overwhelming mitigating factors present in this ease, and because respondent’s misconduct “was not motivated by financial gain, or the desire to gain an advantage in litigation, or any ulterior motive other than his desire to protect his client from humiliating circumstances,” the board recommended respondent be suspended from the practice of law for six months, with all but thirty days deferred.
l9The ODC filed an objection to the disciplinary board’s report and recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
There is no dispute in this matter that respondent deliberately filed a false bankruptcy pleading. He admits that he counseled his clients to use fictitious names on their bankruptcy petition and counseled them to secure a temporary post office box and to list that address on the petition. As found by the disciplinary *62 board, respondent’s conduct violated Rules 1.2(d), 8.3(a)(1), 3.3(a)(8), 3.3(b), 8.4(a), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
Having found evidence of professional misconduct, we now consider the issue of an appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any | ^aggravating and mitigating circumstances. Louisiana State Bar Ass‘n v. Whittington, 459 So.2d 520 (La.1984).
Respondent knowingly violated duties owed to his clients, the public, the legal system, and the profession. His conduct caused potential injury to his clients and actual harm to the legal system and the profession. The applicable baseline sanction is suspension.
In aggravation, respondent possesses substantial experience in the practice of law. In mitigation, the following factors are present: absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, imposition of other penalties or sanctions,[5] and remorse.
Under these circumstances, we find the appropriate sanction for respondent’s misconduct is a six-month suspension from the practice of law, with all but thirty days deferred.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Claude C. Lightfoot, Jr., Louisiana Bar Roll number 17989, be and he hereby is suspended from the practice of law for six months, with all but thirty days deferred. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. For lying on his bankruptcy petition as well as other serious misconduct, Judge Porteous was impeached, removed from his office as a federal judge, and forever disqualified "to hold and enjoy any Office of honor, Trust, or Profit under the United States.” He subsequently resigned from the practice of law in lieu of discipline in In re: Porteous, 11-0078 (La.1/12/11), 52 So.3d 874.

. Respondent was not charged with any crime in connection with the Porteous bankruptcy proceeding. His conduct came to the ODC's attention as a result of the federal investigation into the conduct of Judge Porteous

. In determining a baseline sanction, the board agreed with the hearing committee that respondent’s conduct falls most closely within Standard 6.12 of the ABA’s Standards for Imposing Lawyer Sanctions, which provides for a baseline sanction of suspension when "a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding."

. Respondent testified that he suffered a heart attack in 2003 and that his first wife died of cancer in 2008. However, we note that at the hearing, respondent acknowledged it was not his intent to suggest these unfortunate occurrences caused his misconduct in 2001.

. At oral argument, the ODC advised this court that respondent has been suspended in federal court for the conduct forming the basis of the instant matter.